

| | | |
|---|---|---|
| *William Cafaro, Esq.*<br>*Partner*<br>ADMITTED IN NY, CA, MD & TX<br>Email: bcafaro@cafaroesq.com | **LAW OFFICES OF**<br>**WILLIAM CAFARO**<br><br>108 West 39th Street, Suite 602<br>New York, New York 10018<br>Telephone: 212.583.7400<br>Facsimile: 212.583.7401<br>*www.cafaroesq.com* | *Louis M. Leon, Esq.*<br>*Associate*<br>ADMITTED IN NY<br>Email: lleon@cafaroesq.com |
| *Amit Kumar, Esq.*<br>*Managing Attorney*<br>ADMITTED IN NY & NJ<br>Email: akumar@cafaroesq.com | | *Matthew S. Blum, Esq.*<br>*Of Counsel*<br>ADMITTED IN NY<br>Email: mblum@cafaroesq.com |
| *Andrew S. Buzin, Esq.*<br>*Of Counsel*<br>ADMITTED IN NY, FL & DC | | |

June 14, 2023

<u>*Via ECF*</u>
Hon. Gary R. Brown, U.S.D.J
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re: Pavon v. Landscaping by Fredis, Inc. et al
       Case No.: 21-cv-06857

Your Honor:

  This is a request for approval of the Settlement Agreement[1] in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The fully executed Settlement and Release Agreement ("Agreement") appended as **Exhibit 1**.

**I.  Background and Claims**

  According to the Named Plaintiff, the Defendants operate a landscaping company on Long Island. According to the Plaintiff he worked for the Defendants as a laborer from April 15, 2018 until June 20, 2022. Throughout his tenure, Plaintiff claims from on or about April 15, 2018, until on or about June 15, 2020, Defendants required Mr. Pavon to work 88 hours per week and June 16, 2020 until his termination Defendants required Mr. Pavon to work 65 hours per week. Further, Mr. Pavon claims Defendants paid him a flat weekly salary. After filing his complaint, Plaintiff amended his complaint to add claims for retaliation under the FLSA and NYLL.

  The Defendants dispute the Plaintiff's claims, both as to any alleged underpayment and as to the alleged retaliation. In challenging Mr. Pavon's claims, the Defendants raised various defenses and put forth a number of witnesses who would dispute the Plaintiff's best recollections as to the dates worked, the hours worked, the amounts paid. Defendants further produced hundreds of pages

---

[1] This letter is tendered pursuant to Rule 408 of the Federal Rules of Evidence and § 4547 of the C.P.L.R., with the express understanding that no part hereof or any document submitted herewith may be utilized for any purpose if the Agreement is not approved and litigation must go forward, nor may any of the content or any related documents be used for any purpose except to enforce the Agreement.

of handwritten records concerning the Plaintiff's schedule and the amount he was allegedly paid. Moreover, Defendants interposed viable counterclaims against the Plaintiff, including breach of the duty of loyalty, violation of the faithless servant doctrine, and tortious interference with prospective economic advantage. Lastly, Defendants raised ability to pay as a defense in this action.

On April 18, 2023 the Parties took part in a mediation with EDNY certified mediator Anthony DiCaprio. After hearing the Parties claims and defenses, Mr. DiCaprio made a mediator's proposal of $45,000.00 in order to resolve the case. After the Parties consulted with counsel, they accepted Mr. DiCaprio's proposal.

## II.     The Settlement Reached Between the Parties

After reviewing Defendants' records, and taking them into account, the Plaintiff's damages total $120,680.46, which is inclusive of all liquidated damages. Therefore, the settlement of $45,000.00, the Plaintiff is recovering approximately 37% of his full damages in this case, *inclusive of liquidated damages*.

Plaintiff believes that the $45,000.00 settlement amount is a fair compromise to resolve this case without further litigation, and without subjecting the parties to the time and expense of ongoing litigation. While Plaintiff was confident that he would be able to challenge the Defendants' inferences successfully, the Plaintiff is uncomfortable testifying in a formal setting. If his testimony had been rejected by the trier of fact, his recovery could be significantly minimized. Also, each settling party is represented by counsel experienced in wage and hour practice.

The agreement contains a mutual general release. *See*, **Exhibit 1**. The Parties specifically negotiated this provision due to the viable counterclaims Defendants interposed against the Plaintiff. The mutual general release allows for the parties to have a clean break from one another, and the Plaintiff has not worked for the Defendants for several years. In such circumstances, Courts in this circuit have found settlement agreements with mutual general releases to be fair and reasonable. See, *Mikityuk v. Cision US Inc.*, 2022 U.S. Dist. LEXIS 135405, at *18 (S.D.N.Y. July 29, 2022); *Zai You Zhu v. Meo Japanese Grill & Sushi, Inc.*, 2021 U.S. Dist. LEXIS 193605, at *11-12 (E.D.N.Y. Oct. 6, 2021); *Bumford v. Dodge Ram*, 2020 U.S. Dist. LEXIS 266372, at *4-5 (E.D.N.Y. Aug. 3, 2020); *Strauss v. Little Fish Corp.*, 2020 U.S. Dist. LEXIS 126393, at *13-14 (S.D.N.Y. July 17, 2020); *Gil v. W. J&R*, 2018 U.S. Dist. LEXIS 143001, at *3-4 (S.D.N.Y. Aug. 21, 2018) (allowing for mutual general release in non-class actions where the plaintiff no longer works for the defendant); *Chauca v. Abitino's Pizza 49th St. Corp.*, 2016 U.S. Dist. LEXIS 86206, at *7 (S.D.N.Y. June 29, 2016); *Cionca v. Interactive Realty, LLC*, 2016 U.S. Dist. LEXIS 77372, at *10-11 (S.D.N.Y. June 10, 2016); *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016). Accordingly, the parties' release is appropriate in light of the particular circumstances in this action.

The settlement agreement reflects a reasonable compromise of the disputed issues and any actual or potential claims in the totality of the circumstances. In addition, the parties believe that the certainty of settlement and is better than the uncertain outcome of protracted litigation, and Plaintiff prefers to receive his proceeds without the inevitable delay and significant risks that continued litigation would entail.

### III.     The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotations omitted). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quotations omitted).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, supra at 335.

*Plaintiff's Range of Possible Recovery*

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). Here, while Plaintiff alleges entitlement to damages, Defendants aver that he was properly compensated, and therefore not entitled to any damages whatsoever.

The settlement represents approximately 37% of Plaintiff's wage and hour damages in this case, *inclusive of liquidated damages*. In light of the totality of the circumstances, the settlement represents a reasonable compromise of the *bona fide* dispute in this matter. The settlement eliminates risks and ensures the Plaintiff will receive a meaningful amount of wages due even after paying the legal fee. *See, Rodriguez-Hernandez v. K Bread & Co.*, No. 15-cv-6848 (KBF), 2017 U.S. Dist. LEXIS 78034, at *10 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

*Avoidance of Anticipated Burdens and Expenses*

The settlement agreement avoids anticipated burdens in this action. Specifically, it avoids the time and expense of a jury trial. Moreover, as stated above, Mr. Pavon is uncomfortable testifying

in Court, if his testimony isn't believed, it is likely that a trier of fact would reduce his reward. Moreover, Defendants' interposed counterclaims could severely limit the Plaintiff's recovery. In light of the totality of the circumstances, the Settlement Agreement represents a reasonable compromise of the *bona fide* disputes in this matter. The settlement eliminates risks and ensures that Plaintiff will recover most of his damages within a short period.

### *Litigation Risks*

Importantly, Plaintiff's maximum claimed recovery would be far from inevitable had this case proceeded to trial. If the Defendants' evidence was taken as true, they would substantially reduce (or even eliminate) the Plaintiff's recovery. This makes the amount of post-trial recovery uncertain. Settlement permits the Plaintiff to avoid the risk of obtaining no recovery or substantially reduced recovery at trial. *See, Gomez v. Bogopa Madison LLC*, 2017 U.S. Dist. LEXIS 211003, at *4-5 (S.D.N.Y. Dec. 21, 2017). Lastly, there are also serious concerns about collectability as Company has received reduced revenue during the pandemic.

### *Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in discovery and participated in an arm's length mediation with Anthony DiCaprio, a mediator certified in the EDNY to conduct mediations in wage and hour actions. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length mediation process, it should be granted judicial approval.

### *Possibility of Fraud or Collusion*

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of arm's-length negotiations at mediation and after heavily discussing/disputing the merits of the case. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. Moreover, because the Plaintiff left the Defendants' employ prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon Plaintiff in the workplace which could have precipitated this settlement.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

**IV      Plaintiff's Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount, Plus Expenses**

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering this extremely favorable result. Under the retainer agreement, Plaintiff's counsel would be entitled to a one-third fee on the gross recovery of $45,000.00, which equates to $15,000.00, plus out-of-pocket costs and disbursements, which total $1,027.25, consisting of the following:

| Disbursements | | |
|---|---|---|
| Company | Amount | Description |
| Filing Fee | $ 402.00 | Cost for filing in Court |
| Gotham | $ 90.00 | Service on Ind Defs |
| Servico | $ 79.00 | Service on Corp Defs |
| Mediation | $ 456.25 | |
| **Total** | **$ 1,027.25** | |

The above are reasonable out of pocket disbursements incurred by attorneys and ordinarily charged to the file. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).

Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in a FLSA matter, not all courts in this circuit have read *Cheeks* to require this assessment. *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3 -4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counselor to alter the freedom of contract between a client and his attorney"). Additionally, to the extent *Cheeks* did mention attorney's fees, it was in the context of an abusive attorney's fee that went as high as 43.6%, in contrast to the standard one third which is requested here. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d at 206. Nonetheless, in support of this fee request, the undersigned submits as follows:

Plaintiff's counsel is entitled to reasonable attorneys' fees to compensate for work in recovering alleged withheld compensation in this action. I have personally expended **46.7 hours** in the prosecution of this case. *See,* **Exhibit 2**, Attorney Kumar's time records. "To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (citing *In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I have been an associate with the Law Offices of William Cafaro since 2013 and the Managing Attorney of the firm since 2017. I earned my B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and a J.D from Hofstra University School of Law in 2012. While in law school, I worked as a law clerk for several employment law firms, including Schwartz & Perry, LLP[2] and Outten & Golden LLP. Also, while in law school, I was a judicial intern for United States Magistrate Judge Ronald L. Ellis

---

[2] Now called Schwartz Perry & Heller, LLP

(ret.) of the Southern District of New York. I was admitted to practice in the state courts of New York and New Jersey in 2013 and later that same year I was admitted to practice before the Southern and Eastern Districts of New York. I was further admitted to the Federal District Court of New Jersey in 2019. Since joining the firm, I have been responsible for actively handling and maintaining a case load which at any given time are in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial or resolution. Further, while working at the firm, I have conducted numerous trials (both bench and before a jury) and arbitrations on behalf of employees in employment law disputes, including wage and hour matters. Moreover, I have been selected as a "Rising Star" by Super Lawyers in the "Employment Litigation" category for the years 2017-2023, inclusive. I was also an officer of the South Asian Bar Association of New York in the years 2018 and 2019 and I am currently a member of the National Employment Lawyers Association – New York Chapter. Moreover, in addition to representing plaintiffs who are current or former employees retained on a contingency fee basis, this Firm also represents some clients who pay hourly rates to the firm in employment litigation matters. Of those clients, depending on each client's respective financial abilities, clients have agreed to compensate the undersigned at rates of $300.00 to $400.00 per hour.

Given my experience, the Plaintiff is requesting that the Court approve me at a rate of $300.00 per hour for my work on this case. This rate is reasonable based on my experience. *See, Yu Wei Cao v. Miyama, Inc.*, 2020 U.S. Dist. LEXIS 149336, at *3-*8 (E.D.N.Y. Aug. 18, 2020) (awarding $300.00 per hour for a senior associate with 5 years' experience).

At the requested rate, the total lodestar is **$14,010.00**. Where, like here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See, In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015). Moreover, a multiplier is used in order to compensate Plaintiff's counsel for time that is required administering the settlement. *See, Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *19 (E.D.N.Y. Feb. 18, 2011). Courts have awarded multipliers up to eight (8) times the lodestar and in some cases, they have awarded multipliers that are even higher. *See, Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *see also, Riveras v. Bilboa Rest. Corp.*, No. 17-CV-4430-LTS-BCM, 2018 U.S. Dist. LEXIS 211166, at *4 (S.D.N.Y. Dec. 14, 2018) (approving a lodestar multiplier of 6.7 over Defendants' objection). Here, the multiplier requested is approximately **1.07** which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. *See Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *22-23 (S.D.N.Y. Sep. 23, 2014) (citing *Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.")); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed. Since a reasonable value of the case had already been obtained

6

in a settlement, the only purpose of continuing would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage and hour litigation very well might. Reducing attorneys' fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

### V.     Conclusion

For the reasons set forth above the Plaintiff requests that the Court approve the settlement as reflected in the Agreement. Plaintiff further requests that the Court approve the attorney's fee award and requested costs reflected in the Agreement as fair and reasonable.

>                                 Respectfully Submitted,
>                                 LAW OFFICE OF WILLIAM CAFARO
>
>                                 _____
>                                 By: Amit Kumar, Esq (AK 0822)
>                                 *Attorneys for Plaintiffs*
>                                 108 West 39th Street, Suite 602
>                                 New York, New York 10018
>                                 (212) 583-7400
>                                 Akumar@CafaroEsq.com

CC:

All counsel of record (Via ECF)